## SCHLEIER et v METZGER

Ohio Appeals, 2nd Dist, Montgomery Co

No 1435 Decided March 11, 1937

477

Shaman, Winer & Schulman, Dayton, for Auto Sales Company.

Irvin C. Delscamp, Dayton, for Metzger.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on appeal on question of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The cause originated in the Municipal Court of Montgomery County, Ohio, wherein Raymond E: Metzger was plaintiff and Joseph D. Schleier and J. D. Schleier d. b. a. Jack Schleier Auto Sales were defendants. On June 18, 1935, finding and judgment was returned in favor of plaintiff Metzger. The defendants prosecuted error to the Court of Common Pleas and on August 26, 1936, the finding and judgment of the Municipal Court was affirmed. On September 3, 1936, plaintiff in error filed notice of appeal on question of law and fact.

The designation of appeal on question of law and fact was an inadvertence and should have been designated as appeal on question of law. This erroneous designation is immaterial as the new Procedural Act provides that the Court will hold the case and dispose of it as an appeal on question of law. All the requisite papers are filed as are required under an appeal on law so that no orders on the procedural steps are necessary in this Court.

In the Municipal Court the case was submitted on plaintiff Metzger's Amended Statement of Claim, the answer of the defendant and the evidence.

On request the Judge of the Municipal Court made separate findings of fact and law. The judgment entry was predicated upon the findings of fact and law. The pertinent portion thereof reads as follows:

"It is, therefore, considered by the Court that the plaintiff, Raymond E. Metzger, have and recover from the defendant, Joseph D. Schleier doing business under the firm name and style of Jack Schleier Auto Sales, the sum of $461.50 with interest thereon at the rate of 6% per annum from the 24th day of June, 1934, and that $154.30 of the above judgment be satisfied by payment of the balance due on the judgment in the case of the Maxwell Finance Company v Raymond E. Metzger, No. 10446 on the docket of this Court, which judgment against Raymond E. Metzger in said sum is unpaid; to all of which judgment of the Court the said plaintiff and defendant except.

(Signed) MARTIN, Judge."

Plaintiff Metzger's Statement of Claim is set forth in full for the reason that the issues between the parties are important and present one of the vital questions in determining the cause in this Court.

## "AMENDED STATEMENT OF CLAIM

"On the 14th day of July, 1934, plaintiff and defendant entered into a verbal agreement of sale, whereby the defendant sold and delivered to plaintiff a Chrysler Phaeton, motor C. D. 20172, car number 7517,-559, for the price of $625.00 paid by plaintiff as follows: the defendant accepted from plaintiff, plaintiff's 1932 Plymouth Coupe as part of the consideration for said Chrysler Phaeton at a price of $375.00 less $67.80 which was the balance due on Plymouth Coupe to the Maxwell Finance Company of Dayton, Ohio; and this plaintiff executed and delivered at said time and place his promissory note secured by mortgage on said Chrysler Phaeton in the sum of $356.80."

"Plaintiff further says that the said defendant herein has sold said note to the Maxwell Finance Company, who is an innocent holder for value before maturity.

"Plaintiff further says that as part of the terms and consideration of said contract of sale, defendant then agreed and warwanted to plaintiff verbally that said

Chrysler Phaeton was in A-1 condition mechanically, and was in excellent running order. Plaintiff says that said Chrysler was not at the time of said sale in A-1 condition mechanically, and in excellent running condition, but was unsound in this: that the transmission was defective, which defects are unknown to this plaintiff, and that in the operation of said car the same locked gears and would not operate at all, and was loud and noisy, and plaintiff advised the defendant within two days after the sale of such condition, and the plaintiff herein returned said Chrysler Phaeton to this defendant on Sunday, July 22, 1934, and demanded the return of his motor vehicle to-wit: the Plymouth Coupe and the return of his note and mortgage.

"Plaintiff further says that he has repeatedly demanded from the said defendant, the note and mortgage on the Chrysler Phaeton and the return of the Plymouth Coupe, all of which the said defendant herein refused to do, and that the said defendant herein has the plaintiff's Plymouth Coupe and also the Chrysler Phaeton which he theretofore had sold this plaintiff, to plaintiff's damage in the sum of $664.00 with interest thereon at 6% per annum from the 14th day of July, 1934, as follows: liability of note executed to defendant in the hands of an innocent purchaser for value before due $356.80, which is reduced to judgment in case No. 10446, Municipal Court, Dayton, Ohio, total loss of value of plaintiff's 1932 Plymouth Coupe $307.20 sold by the defendant herein.

"WHEREFORE, plaintiff prays judgment against the said defendant in the sum of $664.00 with interest thereon at 6% per annum from July 14, 1934, and the costs of this action."

The defendant's answer was a general denial. It will be noted that the Statement of claim above quoted makes the allegation that the agreement was a verbal one. Through the presentation of evidence counsel for plaintiff, Metzger, sought to raise the issue that the contract was partly oral and partly written. Counsel for the defendant insist that the contract was entirely in writing. At page 63 of the Bill of Exceptions there is attached Exhibit 1 which purports to be a "Car Order" signed by Raymond E. Metzger. This Exhibit 1 bears evidence that it was prepared on a blank furnished by Jack Schleier Auto Sales. The blank is filled in in pencil, dated July 14 (1934) and in substance is an order for a 1931 Chrysler Phaeton. The

consideration was a Plymouth Coupe on which there was an allowance of $275.00 and a balance due on delivery of $280.00. This exhibit also provided that the balance ($280) was to be paid by sixteen consecutive monthly payments of $22.30 each. This would aggregate $356.80. There was also noted on the order that $65.00 was to be paid to the Maxwell Finance Company to clear the lien on the Plymouth Coupe. The evidence discloses that this amount was paid by the Schleier Auto Sales and the amount was $67.50 instead of $65.00. The printed form contained the following:

"Jack D. Schleier Auto Sales sells the above vehicle 'as it is' and the purchaser accepts the vehicle 'as it is' without recourse for claim or damages on account of any mechanical or other trouble which exists or which may develop later. There is no Warranty as to Model. This order and the acceptance thereof covers all agreements made by Jack D. Schleier Auto Sales. There are no understandings, warranties or agreements, verbal, written or otherwise affecting this contract except as the same are contained herein.

This order is not valid unless accepted by an officer or sales manager of Jack D. Schleier Auto Sales."

The order was not signed by Jack D. Schleier Auto Sales or by any officer or sales manager of such concern. It was the determination of the Court of Common Pleas that by reason of the failure of signature the order would not constitute a written contract; further that there being no written contract the verbal conversations leading up to the transaction were competent and therein was presented evidence of warranty that the Chrysler Phaeton was in first class mechanical condition.

The Common Pleas Court in support of its conclusion cites 110 Ark. 123 and quotes therefrom the following:

"An order for a bill of goods delivered to an agent is not a contract of purchase but merely a proposal which may be withdrawn at any time before acceptance."

Also from the Supreme Court of Ala., 41 S. Rep. page 675 the following:

"In the light of elementary principles and of the cases it seems clear that the order or writing in question does not constitute a contract in the absence of ac-

ceptance or of any action under it by the plaintiff."

Counsel for the Auto Sales Company contend that the instant case is to be distinguished in that there was an acceptance of the written order and that the automobile therein designated for was exchanged and the note for deferred payment was executed. On the question of fact the evidence conclusively supports this claim of the Auto Sales Company.

We do not understand that the signature of both parties is requisite in a written contract. **Ohio Jur., Volume 9, §114. 6 R. C. L., 640.** Aside from the legal question, the plaintiff Metzger supplied the evidence that Jack Schleier signed a copy of the order. See page 28 of the Bill of Exceptions.

It was the claim of the Auto Sales that the order was made out in duplicate, one copy being furnished to Metzger and the other copy retained by the Sales Company. Exhibit 1 was the copy produced by the Auto Sales Company. Metzger was inquired of as to his copy but said that he did not have it. He further stated that he did not remember that he received any copy but as heretofore stated on page 28 of the record, testified that Jack Schleier signed a copy. If the contract was wholly in writing, then the well-known principle of law is invoked that the terms of the written contract may not be altered or changed by parol. There also is the further principle that all things stated by the parties in the negotiations are merged in the written contract. It was the claim of the plaintiff Metzger that the Chrysler Phaeton was not in first class mechanical order. The deal was made on Saturday, July 14th, in the afternoon. He drove the car some on Sunday and returned it on Monday the 16th. His complaint was that it was very noisy in the transmission. Metzger says that Jack Schleier asked him to continue to drive it and that he thought the noise would disappeaer. He was back very frequently during the week and always was met with the same suggestion. The condition did not improve and in about ten days the gears in the transmission stuck, at which time he had the car towed to the place of business of the Auto Sales Company and left it. Jack Schleier was in the east at this time and on the

day of his return was again contacted by Metzger and the request made that the Plymouth Coupe and note be returned to Metzger. This proffer was refused. On August 24th following, suit was instituted.

Another question of extreme importance was presented through the evidence although not contained in the pleading. The Municipal Court in his statement of facts calls attention to this issue and to a certain extent bases his finding thereon.

It is agreed by all parties to the contract that the negotiations started on Friday, July 13th. Metzger testifies that he in company with his lady friend, with the permission of Jack Schleier, took the Chrysler Phaeton out to try it; that after driving it a very short distance the gears in the transmission stuck and that his girl friend, Miss Helen Kyte, was sent to the place of business of Jack Schleier to have him bring the car in and that Schleier did come and drove the car back. On page 55 of the record, upon inquiry by the trial court, Metzger testifies that Jack Schleier on this Friday night agreed that he would repair this condition in the car and then that Metzger would take it. Further that on Saturday, Jack Schleier told him that the repairs had been made. Schleier when first inquired of had no recollection whether or not he was called to help get the car back to his place of business on Friday. Later in his testimony he denied that he made any agreement to repair the car at any time. Miss Kyte corroborates Metzger as to being with him on Friday when he drove the car for a short distance and it stopped. Metzger testifies that the trouble at all times was in the gears. He assumed that the gear trouble manifesting itself on Friday the 13th had been corrected before he made the exchange on the 14th. He reasoned that Jack Schleier's request that he continue to drive the car was to see that the repaired gears would wear in thus removing the noise. It appears in evidence that Schleier Auto Sales negotiated the note and chattel mortgage calling for the sixteen consecutive monthly payments of $22.30 to the Maxwell Finance Company and that after the car was returned by Metzger to Schleier the Finance Company foreclosed the mortgage and sold the car for $202.50. $12.50 of this amount was costs and the balance of $190.00 was applied on the note. The purchaser at the

foreclosure sale testified that the gears were badly broken and had to be replaced. Under this situation the plaintiff Metzger would have a cause of action notwithstanding a written contract. Whether or not there could be a recovery would depend upon the evidence and a determination on the conflicting evidence by a jury or Court, where it is the trier of the █ facts. Where defects are hidden and can not be seen by a purchaser, such purchaser has a right to rely on the seller's representation that such defects have been corrected. This would constitute an inducement to the entering into the subsequent contract and if such representations were false it would render the contract voidable. The difficult question to be determined is as to whether or not this constitutes a variance between the evidence and the plead- █ ings. While not free from doubt, we have arrived at the conclusion that the judgment will not be molested by reason of variance.

Sec 11556, GC, reads as follows:

"No variance between the allegation in the pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action of defense upon the merits. When it is alleged that the party has been so misled that fact must be proved to the satisfaction of the Court. It also must be shown in what respect he has been misled. Thereupon the Court may order the pleading to be amended upon such terms as are just."

Also bearing on the question of variance we refer to the following reported cases:

Benninger v Hess, 41 Oh St 64-68.
Bacon v Daniels, 37 Oh St 279.
Ralston v Kohl, 30 Oh St 92.
Hoffman v Gordon, 15 Oh St 211.
Kolbery v Central Fruit & Grocery Co. 37 Oh Ap 64.
Hubig v Kiewikk & Frederick, 25 C. C. (N. S.) 146.
Also see Ohio Jur. Volume 9 (Contracts)

Sec. 401 Ohio Jur. Volume 2 (Appeal and Error) Sec. 691.

Another section of the Code generally spoken of as the "Substantial Justice Section" is applicable. See §11364 GC. This section is also authority for modifying judgment and we think that under the state of the record the judgment should be modified in the following particulars.

Plaintiff Metzger in his amended statement of claim alleges that the Plymouth Coupe was turned in as part of the consideration for the Chrysler Phaeton at a price of $375 less $67.80 which was the balance due on the Plymouth Coupe to the Maxwell Finance Company. The written order signed by Metzger places the value of the Plymouth Coupe at $275 and from this latter amount should be deducted $67.80 due the Finance Company and paid by Auto Sales. This leaves an amount of $207.20 instead of $307.20. The mortgage note calling for sixteen consecutive monthly payments of $20.30 or a total of $356.80 should have a credit of $190.00, leaving $166.80. This is based on the amount recovered and applied on the judgment in the foreclosure proceedings. The car was sold under the foreclosure for $202.50, but $12.50 of this amount was paid on costs leaving $190.00 to be applied on the note placed in judgment. So that the entry will provide that the Auto Sales Company procure the release of judgment against Metzger in the foreclosure suit or pay into the Municipal Court a sum sufficient to pay off the balance due on such judgment. Interest will be charged and colleced on the amount of $166.80 which may be sufficient to fully release the judgment against Metzger. The other sum, to-wit, $207.20 will bear interest at 6% from July 14, 1934. Costs adjudged against the Auto Sales. Entry may be drawn in accordance with this opinion.

Exceptions will be allowed.

HORNBECK and GEIGER, JJ, concur.
HORNBECK, J: I favor the affirmance of the judgment without modification in the amount thereof by reason of the reduction in the value of the Plymouth.